# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00614-CV

---

**S. M. S. and L. A. E., Appellants**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

### FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 18-0007-CPS395, THE HONORABLE RYAN D. LARSON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

S.M.S. (Mother) and L.A.E. (Father) appeal an order terminating their parental rights to three children, L.S.E.-S., L.A.E.-S., and C.R.E.-S.[1]  Following a bench trial, the district court found by clear and convincing evidence that multiple statutory grounds for termination existed and that termination was in the best interest of the children.  *See* Tex. Fam. Code § 161.001(b)(1)(D), (E), (O), (P), (b)(2).  On appeal, Mother challenges the sufficiency of the evidence supporting the best-interest finding.  Father's court-appointed counsel has filed a motion to withdraw and a brief concluding the appeal is frivolous and without merit.  *See Anders v. California*, 386 U.S. 738, 744 (1967) (stating that court-appointed counsel who believes appeal is wholly frivolous should file motion to withdraw "accompanied by a brief referring to anything

---

[1]  We refer to appellants, the children, and the children's current caregivers by initials or an alias to protect the minors' privacy.  *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

in the record that might arguably support the appeal"). Mother's counsel has not moved to withdraw. We will affirm the district court's order.

## MOTHER'S APPEAL

The Family Code provides for involuntary termination of parental rights on findings that the parent's acts or omissions satisfy at least one statutory ground for termination and that termination is in the child's best interest. *See* Tex. Fam. Code § 161.001(b)(1), (2). The petitioner must prove both prongs by "clear and convincing evidence." *Id.* The Family Code defines "clear and convincing" evidence as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

Proof by clear and convincing evidence is "a constitutional minimum and a statutory mandate that necessitates a commensurately heightened standard of review." *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018). The distinction between legal- and factual-sufficiency review when the standard is clear and convincing "lies in the extent to which disputed evidence contrary to a finding may be considered." *Id.* at 630. In a legal-sufficiency review, the reviewing court "cannot ignore undisputed evidence contrary to the finding, but must otherwise assume the factfinder resolved disputed facts in favor of the finding." *Id*. at 630–31. The evidence is legally sufficient if, "viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id.* at 631 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

Factual-sufficiency review requires weighing the disputed evidence against the evidence supporting the finding. *Id.* The reviewing court must consider whether the "disputed

evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re J.F.C.*, 96 S.W.3d at 266.

Mother concedes the Department proved a statutory ground for termination but challenges the sufficiency of the best-interest finding. There is a strong presumption that preserving the parent-child relationship serves the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Tex. Fam. Code § 153.131(b)). In determining the best interest of the child, we consider the non-exclusive *Holley* factors:

- the children's wishes;

- the children's present and future emotional and physical needs;

- any emotional and physical danger to the children now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody to promote the best interest of the children;

- the plans for the children by the individuals or agency seeking custody;

- the stability of the home or proposed placement;

- parental acts or omissions which may indicate that the existing parent-child relationship is improper; and

- any excuse for the parent's acts or omissions.

3

*In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)).  A best-interest finding does not require proof of a specific factor or set of factors as a "condition precedent" to termination.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

The Department of Family and Protective Services (the Department) received a report that L.A.E.-S. tested positive for cocaine at his birth in March 2017.[2]  The Department did not remove the children immediately but asked Mother to take twice-weekly drug tests, among other requirements.  The Department worked with Mother for ten months before removing the children.  Every urine sample Mother provided before the children's removal was positive for cocaine.  Mother subsequently tested negative in urine tests multiple times, except for one positive test in October 2017.  However, she continued to test positive for cocaine in hair tests, including one the month before trial.

C.R.E.-S. was born six weeks after a positive hair test.  Even though Mother tested negative at the birth, she refused to allow testing of the child.  The Department removed C.R.E.-S. and placed him with a relative, "Sarah," when he was five weeks old.  At that time, C.R.E.-S. was underweight, shivering, and had difficulty breathing.  He required breathing treatments every four hours at first, and daily for six months.  Sarah testified that C.R.E.-S.'s treating physician told her these problems were withdrawal symptoms caused by prenatal exposure to drugs.

Mother's behavior during the case raised concerns regarding her mental health.  In May 2018, Mother called police to report that she heard a sound coming from her car "like an echo, like a video record of, like, kids crying."  She then began taking apart her vehicle to find the

---

[2]  We take this factual summary from the testimony of Mother, Father, the children's current caregivers, a Department caseworker, a Court Appointed Special Advocate volunteer, Mother's mother, and the evidence admitted by the district court.

source of the sound. Photographs taken by police show that she tore up the interior carpet, removed the interior floor, tore off exterior panels, and damaged the windshield. Mother was involuntarily hospitalized in a psychiatric facility for six days after the incident. Four months later, Mother heard the same sound while driving a friend's vehicle. She again called the police and was hospitalized in a psychiatric facility. Mother denied using drugs during either incident and reiterated at trial that she heard the same sound coming from both vehicles.

The record also reflects that Mother did not take the steps necessary to regain custody of the children and to provide for their needs in the future. In addition to drug testing, Mother's service plan required her to attend counseling, participate in visitation through the Department, maintain stable housing and employment, and keep in regular contact with the Department. In fifty-nine of the eighty-five times that Mother was either asked or ordered by a court to take a drug test, she either failed to appear or appeared but refused to provide a sample. She was discharged from therapy and failed to inform the Department when she left on a month-long visit to her mother in New Mexico. Her visitation with the children was suspended because she missed several visits, and she never asked to resume visitation. Later, when the Department asked for her address to conduct a home study—a prerequisite to the children's return—Mother supplied the address of a gas station. Finally, Mother testified that she was unemployed and had not secured a place to live after her lease expired at the end of the month of trial.

While there is no evidence of the children's desires, the district court heard undisputed evidence that the children are thriving in their new placements. Sarah testified that C.R.E.-S. has gained weight and no longer needs breathing treatments. Sarah is his full-time caregiver and has substantial assistance from her grown children. The Department placed the two older children with Sarah's sister, "Jessica." L.S.E.-S. had "intense tantrums" and L.A.E.-S.

5

suffered from breathing problems at the time of the placement, but both issues had improved by trial. The children are described as "happy" and see each other frequently because Jessica's and Sarah's families are close. Jessica and Sarah intend to adopt the children if Mother's rights are terminated.

Mother does not dispute her pattern of drug use and instability or that the children have improved in their current placements. She argues instead that her testimony established she no longer uses cocaine and that this improvement warrants preserving her parental rights. The district court could have reasonably disregarded her testimony, especially given the evidence that her drug use continued during most of the case. *See In re P.A.C.*, 498 S.W.3d 210, 214 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting that under legal- and-factual sufficiency review factfinder is "the sole judge of the credibility of the witnesses and the weight to be given their testimony"); *see also N.P. v. Texas Dep't of Family & Protective Servs.*, No. 03-19-00217-CV, 2019 WL 3952842, at *8 (Tex. App.—Austin Aug. 22, 2019, no pet.) (mem. op.) ("[E]vidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past." (quoting *Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.))). Even if the record supported a finding that cocaine use is no longer an issue for her, Mother herself testified that she had no place for the children to live and no income to support them, and she failed to offer any plans for establishing a stable home for them. *See In re F.M.E.A.F.*, 572 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) ("A child's need for permanence through the establishment of a stable, permanent home is the paramount consideration in a best-interest determination."). Reviewing the record under the appropriate standards of review and considering the relevant factors, we conclude that legally and factually sufficient evidence supports the district

6

court's conclusion that termination was in the best interest of the children. We overrule Mother's sole issue.

## FATHER'S APPEAL

Father's court-appointed counsel has filed a motion to withdraw accompanied by a brief alleging that his appeal is frivolous and without merit. *See Anders*, 386 U.S. at 744; *In re P.M.*, 520 S.W.3d 24, 27 & n.10 (Tex. 2016) (per curiam) (approving use of *Anders* procedure in appeals from termination of parental rights). Counsel's brief meets the requirements of *Anders* by presenting a professional evaluation of the record demonstrating that there are no arguable grounds for reversal to be advanced on appeal. *See* 386 U.S. at 744; *Taylor v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 641, 646–47 (Tex. App.—Austin 2005, pet. denied). Counsel has certified to this Court that he provided Father with a copy of the *Anders* brief and motion to withdraw as counsel and a notice of his right to file a pro se brief. Appellee in this case, the Department, has not filed a response. Father has not filed a brief to date.

Upon receipt of an *Anders* brief, we must conduct a full examination of the proceedings to determine whether the appeal is wholly frivolous. *See Penson v. Ohio*, 488 U.S. 75, 80 (1988); *Taylor*, 160 S.W.3d at 647. After reviewing the record and the briefing, we find nothing that would arguably support a meritorious appeal. We thus agree with counsel that this appeal is frivolous and without merit. We nevertheless deny counsel's motion to withdraw. The Supreme Court of Texas has held that a parent's right to counsel in termination suits extends to "all proceedings in [the Supreme Court of Texas], including the filing of a petition for review." *In re P.M.*, 520 S.W.3d at 27. Accordingly, counsel's obligation to Father has not yet been discharged. *See id.* If Father, after consulting with counsel, desires to file a petition for review, counsel should

7

timely file with the high court "a petition for review that satisfies the standards for an *Anders* brief." *See id.* at 27–28.

## CONCLUSION

We affirm the district court's order of termination.

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:  February 19, 2020

8